UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

Ivory McCormick,

MEMORANDUM & ORDER

          Petitioner

16-cv-01337 (ERK) (LB)

– against –

C. Jacobson,

          Respondent.

KORMAN, *J.*:

This habeas corpus case arose out of events that occurred on September 20, 2008.[1] That evening, petitioner Ivory McCormick, along with his girlfriend Sabrina Robinson and stepdaughters Dylesha Robinson and Taisha Smith, fought Angelica and Angelina Hollis and Ebony Williams outside of the Ocean Village residential complex in Far Rockaway, Queens, where they all lived. The Hollis sisters both testified that petitioner punched them in the face, and Angelica testified that petitioner gave Dylesha a screwdriver and encouraged her to stab Angelica. *See* Tr. 1319–23, 1427, 1518–34, 1588–96, 1608–10, 1958. Angelina testified that petitioner also stabbed her and Williams, who testified that she came to Angelica's

---

[1] This case was reassigned to me from another judge earlier this year. As reflected in the docket sheet, I did not learn until October 12, 2021, that petitioner had served his full sentence, was on post-release supervision, and that he wished to press his petition. ECF No. 17.

aid. *See* Tr. 948–51, 1981–86, 1996–2005, 2216–17, 2430, 2455, 2463–64. While petitioner argued at trial that witnesses mistook him for Dylesha and Taisha's biological father, James Willis Smith, five eyewitnesses, including three who had met or seen petitioner before, identified petitioner at trial as a participant in the assaults. *See* Tr. 657–58, 943–44, 1320–21, 1369, 1712–13, 1957. In December 2011, the jury found petitioner guilty of three counts of second-degree assault, which charged him of assaulting Angelica, Angelina, and Williams, but they acquitted him of two counts of first-degree assault related to Williams and one count of second-degree assault related to Lakeisha McKines. *See* Tr. 3121, 3199–200. The trial court sentenced petitioner, as a second violent felony offender, to concurrent seven-year sentences on each count and five years of post-release supervision. Sentencing Transcript, ECF No. 13-22 at 13, 23–24.

The Appellate Division affirmed on direct appeal. *People v. McCormick*, 117 A.D.3d 754 (2d Dep't 2014). On appeal, petitioner raised the following arguments, as relevant here: (1) that the integrity of the grand jury proceedings was impaired; (2) that the trial court erred by refusing to give an alibi jury instruction; and (3) that he was denied a fair trial and due process when the trial judge gave a jury instruction about James Willis Smith during the prosecutor's summation. State Court Record, ECF No. 6 at 22–35. The Appellate Division first rejected petitioner's argument that the integrity of the grand jury proceeding was impaired. *McCormick*, 117 A.D.3d at

754–55. Second, it held that while the trial court improperly refused to give an alibi jury instruction, reversal was not warranted "because the court's charge as a whole correctly conveyed the People's trial burden." *Id.* at 755. Finally, the Appellate Division held that the trial court "providently exercised its discretion in precluding defense counsel from making certain summation comments because they lacked a good faith basis in the record and rested on speculation," and these "rulings did not impair the defendant's right to deliver a summation and present a defense." *Id.* The Court of Appeals denied leave to appeal. *People v. McCormick*, 17 N.E.3d 508 (N.Y. 2014).

Petitioner filed his first *pro se* motion pursuant to N.Y. Crim. Proc. Law § 440.10 on October 29, 2014. ECF No. 6 at 166–91. He argued, in part, that (1) the trial court impermissibly interjected itself into the proceedings, depriving him of a fair trial; (2) the court's preclusion of Sabrina Robinson's alibi testimony violated his right to compulsory process, and the trial court erred by not giving an alibi charge; and (3) he was actually innocent. *Id.* at 166–72, 175–78. In support of his actual innocence claim, petitioner attached October 2014 affidavits from Sabrina Robinson, petitioner's girlfriend and then fiancée, Darryl Robertson[2], Sabrina's

---

[2] Darryl is Sabrina Robinson's brother, and was sometimes referred to as Darryl Robinson at trial. *See* Gov. Mot. in Opp., ECF No. 8-1, at 5 n.4. Because he uses the last name Robertson in his affidavits, I use that last name.

3

brother, Wendy Blocker, Sabrina's cousin, and Dylesha Robinson, Sabrina's daughter and petitioner's stepdaughter. *Id.* at 180–89; Tr. 2720–22. These individuals said that petitioner was asleep in Sabrina's apartment at Ocean Village throughout the fights, which were outside, and did not participate. *Id.* The CPL § 440.10 court found that petitioner's actual innocence claim was "not substantiated" because he had "failed to set forth any newly discovered clear and convincing evidence of actual innocence." *Id.* at 216. The court held that petitioner's remaining claims were procedurally barred because they had been previously raised, or could have been raised, on direct appeal. *Id.* Petitioner did not seek leave to appeal this order.

Petitioner, however, filed a second *pro se* § 440.10 motion on May 3, 2015. *Id.* at 219–51. Petitioner argued, for the first time, that his counsel was ineffective for failing to investigate and develop an alibi defense and for failing to file a pretrial alibi notice. *Id.* at 229–40. Petitioner again argued that he was actually innocent. *Id.* at 241–49. He attached the same four affidavits, as well as two new affidavits from Blocker and Robertson containing additional allegations. *Id.* at 259–68, 274–76. Petitioner also attached an affidavit from himself attesting to his innocence. *Id.* at 270–73. The § 440.10 court found that petitioner failed to present "any newly discovered evidence in support of his motion which could not have been raised on appeal," that counsel had presented alibi evidence at trial, and that counsel had

4

"effectively represented" petitioner. *Id.* at 330. The court also concluded that petitioner's "motion [was] procedurally barred in that the issues raised . . . are issues which he failed to raise on appeal. Additionally, he has failed to set forth any new clear and convincing evidence of his actual innocence." *Id.* at 331. The Appellate Division denied leave to appeal. *See* Def.'s Mot. in Opp., ECF No. 8-1 at 20. This petition pursuant to 28 U.S.C. § 2254 followed.

## DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). While petitioner has served the seven-year term of incarceration that had been imposed, he is currently serving a term of post-release supervision and therefore remains "in custody." *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'").

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the petitioner's claims have been rejected on the merits by a state court, the court may grant the writ only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State

5

court proceeding." 28 U.S.C. § 2254(d).

Federal court review under the "unreasonable application" clause "is extremely deferential: 'a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). If the state court does not provide reasons for its decision, a federal habeas court must examine "what arguments or theories . . . could have supported" that decision and whether reasonable judges "could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102. Federal court review under the unreasonable application prong "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Petitioner first argues that he was denied a fair trial when the trial judge gave a limiting instruction regarding the evidence as it related to James Willis Smith. Defense counsel suggested in his opening statement and in his summation that Willis Smith was the attacker, not petitioner. Specifically, in his opening statement, he said, "Now I am going to ask you to do something. I am going to ask you that every time you hear the name Ivory McCormick [petitioner] you erase it and you add the name James Willis Smith. Delete Ivory McCormick. Insert James Willis Smith." Tr. 608.

6

The trial judge did not suggest that this was in any way improper. Subsequently, in his closing argument, defense counsel referred back to his opening statement: "Now, I had said to you in my opening: Delete 'Ivory [McCormick],' insert 'James Willis Smith.' Delete 'Ivory [McCormick]' when you hear the name 'Ivory [McCormick]' and insert 'James Willis Smith.' Why not? Why can't we do that?" Tr. 2946. The prosecutor did not object to either the opening statement or the summation. Nor did the trial judge suggest that this was an improper argument.

Subsequently, the prosecutor gave his closing statement, in the course of which he referred to the foregoing argument that defense counsel made, and he began by saying: "So James Willis Smith. Okay, it's been a long day, everyone is tired, but we can't end this without talking about James Willis Smith. We simply can't do it, *because that's the person who they inferred to have committed these physical acts*, okay, because remember Sabrina testified" that when she saw Angelica, no physical harm had been done to her. Tr. 3086 (emphasis added). The trial court interrupted at this point and instructed the jury that the evidence about Willis Smith "was received not as evidence of his involvement in the injuries to the five complainants, it was admitted solely to indicate who he is, what [Sabrina Robinson] saw and what she said to the detectives, so to do anything other, to hear it as evidence of his involvement in any attacks is to speculate." *Id.*

This instruction is more confusing than it is erroneous. The part of the

7

instruction advising the jury that evidence related to Willis Smith was admitted to show "what [Sabrina Robinson] saw and what she said to the detectives" was arguably helpful to the petitioner, *id.*, because the clear implication of Sabrina's testimony was that Willis Smith was involved "in the injuries to the five complainants." *Id.*; *see* Tr. 2784–91. Indeed, the Assistant District Attorney understood that this was the inference the defense was drawing and he tried to rebut that inference before he was interrupted by the trial judge. So when the judge told the jury that Sabrina's testimony was received not as evidence of Willis Smith's involvement in the assaults but that they could consider the testimony of what Sabrina Robinson said she saw and what she said to the detectives, he sent conflicting signals as to whether the jury could consider the evidence as tending to incriminate Willis Smith.

In any event, setting aside this somewhat confusing instruction and assuming that the court's comment was error, it could not have had a "substantial and injurious effect" on the jury's verdict. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (holding that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]. . . whether or not the state appellate court recognized the error and reviewed it for harmlessness") (internal quotations omitted).

8

Five eyewitnesses identified petitioner at trial as a participant in the assaults. *See* Tr. 657–58, 943–44, 1320–21, 1369, 1712–13, 1957. Indeed, witnesses Christina Ojeda and Teresa Hicks had seen petitioner multiple times before the fight, and witness Angelica Hollis had met petitioner before the fight. *See* Tr. 657–58, 1358–59, 1598, 1745–48, 1806–08. Additionally, Angelica and Angelina Hollis and Ebony Williams—the victims in petitioner's counts of conviction—all testified that they did not know Willis Smith. *See* Tr. 1414–15, 2096, 2518–19, 3121, 3199–200. It is implausible that all of the witnesses would have confused petitioner with Willis Smith.

Moreover, Sabrina Robinson, petitioner's girlfriend of ten years at the time of the fights, was the only witness to testify about Willis Smith's presence at the fights. Tr. 2722. And while she testified that she saw Willis Smith outside "jumping in and out of the crowd" and with blood on his shirt, she admitted that she never saw him with a weapon or doing any cutting. Tr. 2743, 2771–73. Sabrina further admitted that she was not "on good terms" with Willis Smith, Dylesha and Taisha's biological father, before the date of the fights. Tr. 2843–44. Petitioner's version of events was also implausible. It required the jury to believe that he would sleep, or that Sabrina would allow him to sleep, after Sabrina's cousin Wendy Blocker woke up Sabrina, who was in bed with petitioner and their four-year-old daughter, to tell her that Sabrina's daughters, petitioner's stepdaughters, were fighting outside. Tr. 2726.

9

Thus, even if the court had not instructed the jury in the way it did, it is inconceivable that the jury would have credited petitioner's counsel's argument that the witnesses mistook Willis Smith for petitioner. Indeed, it is even more inconceivable because petitioner did not testify at trial that he was not there and that he did not commit the assaults of which he was convicted.[3]

Petitioner's next argument that the trial court erred in refusing to provide an alibi jury instruction is likewise unavailing for the reasons stated in the Attorney General's memorandum in opposition and the opinion of the Appellate Division. ECF No. 8-1; *McCormick*, 117 A.D.3d at 755.

Petitioner's third claim that the integrity of the grand jury was impaired is unreviewable here, because petitioner did not raise this issue in his leave application to the New York Court of Appeals. *See* ECF No. 6 at 142–46; *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991). In any event, because the Grand Jury Clause of the Fifth Amendment has not been incorporated by the Due Process Clause of the Fourteenth Amendment, any defect is purely a state law issue. *See Fields v. Soloff*,

---

[3] This is not to suggest that the jury would have drawn an adverse inference from his failure to testify, but simply a reflection on the absence of proof to support his alibi in the context of a case in which such testimony, as a practical matter, would appear to have been critical. *See United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 42 (2d Cir. 1997) ("Rather than drawing an adverse inference, the district court was simply indicating that, by not testifying, defendant had failed to contradict the government's evidence with his own testimony.").

920 F.2d 1114, 1118 (2d Cir. 1990) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

Because petitioner failed to raise his ineffective assistance of counsel claim in his first CPL § 440.10 motion, the second § 440.10 court permissibly found that he was procedurally barred from raising it in his subsequent motion. *See* CPL § 440.10(3)(c); ECF No. 6 at 331 ("The defendant's motion is procedurally barred in that the issues raised in his motion are issues which he failed to raise on appeal."). Petitioner has also failed to show that his actual innocence claim may serve as a "gateway" to overcome that procedural bar. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995).[4] The Supreme Court has stressed that petitioner's burden in making a gateway showing under *Schlup* is "demanding" and that cases satisfying the *Schlup* standard are "rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (internal quotation omitted). "To satisfy the *Schlup* standard, a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). The "credible" requirement means the petitioner must offer "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324. To

---

[4] Actual innocence as a gateway to overcome a procedural bar should be distinguished from actual innocence as an independent basis for habeas corpus relief from a state court judgment of conviction. There is no clear holding of the Supreme Court that establishes actual innocence as the basis for such a challenge. *See Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010).

11

make a "compelling" claim, petitioner must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 522, 538 (2006). A "habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 327–28) (internal quotation marks omitted).

The CPL § 440.10 court's conclusion on both motions that petitioner "failed to set forth any new clear and convincing evidence of his actual innocence" is not unreasonable. ECF No. 6 at 331; *see also id.* at 216. Several features of the affidavits indicate that they are unreliable. First, the "affidavits all come from witnesses who cannot fairly be characterized as disinterested." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 337 (N.D.N.Y. 2018). Sabrina Robinson was petitioner's girlfriend and then fiancée, Darryl Robertson is Sabrina's brother, Wendy Blocker is Sabrina's cousin, and Dylesha Robinson is Sabrina's daughter and petitioner's stepdaughter. *See* ECF No. 6 at 187; Tr. 2720–22. The witnesses' relationships to petitioner thus "reduces their [affidavits'] weight and reliability." *Jones v. Taylor*, 763 F.3d 1242, 1249 (9th Cir. 2014); *see House*, 547 U.S. at 552 (noting that a "spontaneous statement recounted by two eyewitnesses with no evident motive to

12

lie . . . has more probative value than, for example, incriminating testimony from . . . friends or relations of the accused").

Second, all four witnesses came forward with their stories at "roughly the same time," three years after trial and six years after the assaults, "and only one of them provided a reason for the delay." *Jones*, 763 F.3d at 1249; *see also Craig v. Coleman*, No. 17-4099, 2018 WL 5281956, at *2 (6th Cir. Apr. 18, 2018) ("[A]ffidavits of family members created well after trial are of questionable reliability and fall short of the extraordinary showing necessary to establish actual innocence."). An "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite [actual innocence] showing." *Perkins*, 569 U.S. at 399; *see also Schlup*, 513 U.S. at 332 (courts "may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of [the] evidence"). The only witness who provided an explanation for the delay was Wendy Blocker, who said in her second 2015 affidavit that petitioner's counsel had "never questioned" her about what she knew. ECF No. 6 at 274. The prosecutor opposing the second § 440.10 motion noted that Blocker's account of events was "in direct conflict" with that of Dominique Yates, who testified to petitioner's alibi before the grand jury. *Id.* at 283. As for Darryl Robertson, defense counsel informed the prosecutor that he did not think Darryl "ever made himself available to speak with him," and Sabrina expressed

13

a concern that he might be arrested because he also participated in the fights. *Id.* at 284.

As for petitioner's affidavit, attached to his second § 440.10 motion, it is notable that he did not testify at trial and did not attach the affidavit to his first § 440.10 motion. While petitioner's decision not to testify is his constitutional right, "he cannot use that right as shield to protect him from potential criminal liability while concomitantly wielding his affidavit[] as a sword. . . . Without the threat of cross-examination, [petitioner's] affidavit[] [is] viewed as self-serving and given little weight." *DiMattina v. United States*, 949 F. Supp. 2d 387, 410–11 (E.D.N.Y. 2013) (Weinstein, *J.*) (citing *A.B. Leach & Co. v. Peirson,* 275 U.S. 120, 128 (1927) ("A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove.")). The same goes for Dylesha Robinson, petitioner's co-defendant, who did not testify at trial, but provided an affidavit during the § 440.10 proceedings.

In any event, petitioner has not demonstrated that more likely than not, "no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538. The affidavits are mostly duplicative because Sabrina testified at trial that Wendy Blocker woke her up to tell her that her daughters were outside "being jumped," that she did not see petitioner outside during the fighting, and that when she got back to her apartment, petitioner was still sleeping. *See Craig*, 2018 WL

14

5281956, at *2; Tr. 2726–28, 2747, 2755, 2764, 2766–68. Although the jury acquitted Sabrina, it disbelieved the implication from her testimony that petitioner was not at the scene at all. She, Darryl, Dylesha, and Blocker have merely realleged her claims in their affidavits. The only new claim is found in Darryl's second affidavit, where he alleged that he saw "James Willis Smith with a box cutter slashing numerous people." ECF No. 6 at 275. The omission of this fact from his first affidavit further casts doubt on the reliability of both. Moreover, five people identified petitioner in court as present at the scene; it was implausible that petitioner would sleep after Blocker woke up Sabrina to inform her that petitioner's two stepdaughters were fighting outside; and Sabrina did not testify that James Willis Smith committed any criminal acts.

Even if his claim of ineffective assistance of counsel is not procedurally barred, petitioner has failed to show that the state court unreasonably rejected it. Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must show (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Under the "unreasonable application" clause of § 2254(d), "[b]ecause the *Strickland* standard is a general standard, a state court has even more latitude to

reasonably determine that a defendant has not satisfied that standard." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (*per curiam*) (internal quotation omitted). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105. The CPL § 440.10 court's conclusion that counsel effectively represented him was not an unreasonable application of *Strickland* for the reasons detailed in the memorandum filed by the Attorney General. ECF No. 8-1 at 35–38.

## CONCLUSION

The petition for writ of habeas corpus is denied. I also decline to issue a certificate of appealability.

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
December 16, 2021